IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SUSAN A. WYATT, et al.,

                Plaintiffs,

v.                                          CIVIL ACTION NO.  2:09-cv-00685

CHARLESTON AREA MEDICAL CENTER, INC.,
et al.,

                Defendants.

**MEMORANDUM OPINION & ORDER**

Pending before the court is the plaintiffs' Motion to Remand [Docket 7].  For the reasons discussed below, the motion is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** insofar as this case is **REMANDED** to the Circuit Court of Kanawha County, West Virginia.  It is **DENIED** as to the plaintiffs' request for an award of fees and costs.

**I. Background**

The plaintiffs, Susan A. Wyatt and Charles Wyatt, filed this action in the Circuit Court of Kanawha County, West Virginia on March 10, 2009.  (Notice Removal, Ex. A [Docket 1].)  The Complaint arises out of Ms. Wyatt's 2007 "Medtronic Entrust defibrillator explant surgery performed at [Charleston Area Medical Center, Inc. ("CAMC").]" (*Id.*)  Ms. Wyatt alleges that after her surgery the defibrillator malfunctioned, leading to multiple shocks to her heart which caused her injury.  (Pls.' Mem. Supp. Mot. Remand 4 [Docket 8].)  She was then transported to CAMC, where Ms. Wyatt alleges that "the local healthcare providers were negligent in their care, monitoring, and treatment of plaintiff Susan Wyatt, including, but not necessarily limited to, not having the proper training, knowledge, and equipment to appropriately monitor the events and to stop the defective

product from continuing to send shocks to the plaintiff['s] heart." (*Id.* at 4-5.) The plaintiffs' Complaint alleges that Ms. Wyatt "suffered emotional distress, medical expenses, lost wages, needless pain and suffering, annoyance, and the requirement to be monitored" as a result of actions by the defendants, CAMC, Kenneth C. Adkins, D.O. ("Dr. Adkins"), Charleston Heart Specialists, PLLC ("CHS"), Ramakrishnan S. Iyer, M.D. ("Dr. Iyer"), Medtronic, Inc., and Medtronic USA, Inc. (*Id.*, Ex. A at 5.)

The Complaint asserts five different counts: Count I alleges negligence by CAMC, Dr. Adkins, Dr. Iyer, and CHS (collectively, "the Medical Defendants") that caused both Ms. Wyatt and Mr. Wyatt to suffer numerous injuries; Count II alleges negligence by Medtronic, Inc. and Medtronic USA, Inc. (collectively, "Medtronic") that caused the same injuries to the plaintiffs; Count VI is a strict liability claim against Medtronic for allegedly causing the same injuries to the plaintiffs; Count VII is a breach of warranty claim against Medtronic for allegedly causing the plaintiffs' injuries as well; and Count VIII seeks punitive damages from all the defendants.[1] (*Id.*, Ex. A at 5-10.)

On June 17, 2009, Medtronic filed a Notice of Removal with this court. Medtronic asserted that removal was appropriate in this case based on this court's diversity jurisdiction. (Notice Removal 3.) Medtronic stated that the plaintiffs are both citizens of West Virginia and that all the properly joined defendants, Medtronic, Inc. and Medtronic USA, Inc., are citizens of Minnesota because they are both Minnesota corporations with their principal place of business in Minnesota. (*Id.* at 1, 3.) Medtronic argues that although each of the Medical Defendants are citizens of West Virginia for purposes of jurisdiction, all four of the Medical Defendants were fraudulently misjoined

---

[1] The Complaint does not state a Count III, IV, or V.

and therefore do not defeat diversity.  (*Id.* at 3-4.)  In making this argument, Medtronic relies extensively on *Ashworth v. Albers Medical Inc.*, 495 F. Supp. 2d 395 (S.D. W. Va. 2005), which discussed fraudulent misjoinder and the doctrine's application.  (*Id.*; *see generally* Medtronic Response Pls.' Mot. Remand.)  Medtronic argues that I should follow *Ashworth* by severing and remanding the claims against the Medical Defendants, who were misjoined, but allow the claims against Medtronic to remain in federal court.[2]  (Notice Removal 4.)

The plaintiffs filed the pending Motion to Remand on June 24, 2009.  The plaintiffs argue that the Medical Defendants were properly joined and, therefore, complete diversity does not exist.  (Pls.' Mem. Supp. Mot. Remand 1.)  The plaintiffs' memorandum argues that I should remand and award reasonable costs and expenses because Medtronic has no objectively reasonable argument for removal.  (*Id.* at 3-4.)  The plaintiffs then devote a large portion of the memorandum to the law of fraudulent joinder.[3]  (*Id.* at 9-18.)

In response, Medtronic clarifies that it did not remove the case based on a theory of fraudulent joinder, but instead, based on the fraudulent *mis*joinder doctrine described in detail in the

---

[2]  Medtronic filed a Motion to Stay Pending MDL Transfer [Docket 5] on June 24, 2009.  Addressing a Motion to Remand, however, is an appropriate action for a court to take before a case is transferred to an MDL.  *See, e.g., JPML R. 1.5*; *Gen. Elec. Co. v. Byrne*, 611 F.2d 670, 673 (7th Cir. 1979) ("The mere pendency of a motion to transfer before the Multidistrict Panel does not affect or suspend the jurisdiction of the transferor court, or limit its ability to act on matters properly before it."); *Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 844 (S.D. W. Va. 2008).  If this court does not have jurisdiction due to improper removal, then neither will the MDL court.  Accordingly, I am addressing the Motion to Remand before I address the Motion to Stay.

[3]  The plaintiffs attempt to distinguish *Ashworth* on its facts, by highlighting that it "did not involve a patient joining medical professional liability claims asserted against a hospital and physicians regarding their care and treatment of the patient in connection with a defective medical device with product liability claims against the defective medical device's manufacturer."  (Pls.' Mem. Supp. Mot. Remand 15.)  While the plaintiffs' assertion is true, it does not speak to whether the reasoning in *Ashworth* should apply to the current case.

*Ashworth* case. (Medtronic Defs.' Resp. Pls.' Mot. Remand 3-4 [Docket 19].) Specifically, Medtronic argues that "the medical negligence claims against the Medical Defendants should not be joined with the product defect claims against [Medtronic]." (*Id.* at 4.) Because it assert that the two types of claims should not be join, Medtronic asks that I sever and remand the claims against the Medical Defendants, while retaining jurisdiction over the claims against Medtronic. (*Id.*)

## II. Removal, Fraudulent Misjoinder, and *Ashworth*

Defendants in civil actions originally filed in state court, and who are not themselves citizens of that state, may remove the case to federal court if it is a type of case "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Removal statutes, however, are construed strictly by federal courts. *Healy v. Ratta*, 292 U.S. 263, 270 (1934). If the federal district court's jurisdiction is doubtful, then the case must be remanded. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and all the plaintiffs are citizens of different states than the citizenship state of each defendant. *Id.*; *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005). "Diversity jurisdiction is typically determined from the face of the plaintiff's well-pled complaint." *Ashworth*, 395 F. Supp. 2d at 402.

Fraudulent joinder and fraudulent misjoinder are two distinct legal doctrines that provide exceptions to the well-pled complaint rule as it applies to removal based on diversity jurisdiction by allowing courts to disregard the citizenship of certain parties. Fraudulent joinder is applicable where a defendant seeking removal argues that other defendants were joined when there is no possible successful cause of action against those defendants or where the complaint pled fraudulent facts. *See Ashworth*, 395 F. Supp. 2d at 403. Fraudulent misjoinder, on the other hand, is an

-4-

assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal. *See id.* at 409-10.

The doctrine of fraudulent misjoinder is relatively new and not clearly defined. *See id.* at 410 (noting that the standard is "inherently ambiguous"). In creating the doctrine, the Eleventh Circuit stated that:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy. . . . We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

*Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (internal quotations omitted), *abrogated on other grounds by*, *Cohen v. Office Depot*, 203 F.3d 1069 (11th Cir. 2000). Under this standard, "something more than 'mere misjoinder' of parties may be required to find fraudulent misjoinder. Precisely what the 'something more' is was not clearly established in *Tapscott* and has not been clearly established since." *In re Bridgestone/Firestone, Inc.*, 260 F. Supp. 2d 722, 728 (S.D. Ind. 2003). The prevailing standard is whether there is a "reasonable possibility that a state court would find that [the plaintiffs'] claims against [one set of defendants] were properly joined with [the] claims against the other defendants[.]" *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956, 971 (S.D. Ind. 1999); *see also Ashworth*, 395 F. Supp. 2d at 410.

In *Ashworth*, the court noted that permissive joinder is governed by Rule 20 of both the Federal Rules of Civil Procedure and the West Virginia Rules of Civil Procedure. Federal Rule of Civil Procedure 20 provides, in pertinent part, that:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a); *see also* W. Va. R. Civ. P. 20(a). The *Ashworth* court then quoted numerous sources for the following statement of law about Rule 20:

> The rule imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted out of the same transaction or occurrence; and [2] some question of law or fact common to all the parties will arise in the action. Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a). . . . [T]he rule should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits. . . . The test under the first prong does not require absolute identity of events and would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. . . [T]his test is similar to the logical relationship test under Rule 13(a) in which all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. . . . The second prong of Rule 20(a) requires that the claims have commonality of law or fact. . . . It should be noted that Rule 20(a) does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be at least one common question of law or fact.

*Ashworth*, 395 F. Supp. 2d at 411-12 (internal citations and quotations omitted).

   *Ashworth* involved a plaintiff's case against multiple parties. The plaintiff alleged that most of the parties allowed a counterfeit prescription drug to reach consumers, which harmed the plaintiff, and further alleged that the Rite Aid pharmacy who sold the prescription drug in question to the plaintiff violated her rights in a number of ways. *See id.* at 398-402. At the point in the opinion where the court addressed the fraudulent misjoinder argument, the only claim remaining against the Rite Aid pharmacy was that Rite Aid inadequately complied with the plaintiff's request for production of medical records. *Id.* at 412. The court held that this "claim against Rite Aid seeking the production of medical records does not share any common questions of material fact or law with

-6-

her claims against the remaining defendants." *Id.* The court stressed that the "claims against the remaining defendants are predicated upon [the plaintiff's] alleged consumption of counterfeit tablets and the roles of those diverse defendants in allowing counterfeits to reach her[,]" while the "claim against non-diverse Rite Aid concerns a written request for medical records and a purported failure . . . to comply with that request." *Id.*

The *Ashworth* court then reasoned that Rite Aid was not a proper party in the case. "Rite Aid's liability under the statute does not turn on any resolution of whether any of the tablets sold to and consumed by plaintiff were counterfeit." *Id.* "Rather, the inclusion of non-diverse Rite Aid serves to unfairly defeat the diverse defendants' right to have the action against them heard in this court." *Id.* The court then held that there was not a common fact or legal question governing the claims and that Rite Aid was, therefore, fraudulently misjoined. *Id.* The court then severed the plaintiff's cause of action against Rite Aid and remanded the severed claim for lack of jurisdiction. *Id.* Finally, the court held that it had jurisdiction over the remaining claims against the remaining defendants and, therefore, denied the motion to remand as to those parties and claims. *Id.* at 414-15.

**III. Analysis**

This case presents a question similar to that addressed in *Ashworth*. In this case, Medtronic asserts that this court would have original jurisdiction over this action under the court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Medtronic further argues that the Medical Defendants were fraudulently misjoined and that the claims against the Medical Defendants should be severed and remanded, while the claims against Medtronic should remain in federal court. The plaintiffs' Complaint provides that the plaintiffs are both citizens of West Virginia and that Medtronic is a citizen of Minnesota. (Notice Removal, Ex. A.) Medtronic, therefore, argues that diversity exists

as to itself and the plaintiffs. But, the plaintiffs' Complaint also shows that the Medical Defendants are citizens of West Virginia, like the plaintiffs. (*Id.*) This fact is uncontroverted. (*Id.* 3-4.) Medtronic argues that removal in this case was appropriate because the claims against the Medical Defendants are distinct from and unconnected to the claims against Medtronic, and therefore the Medical Defendant were fraudulently misjoined. Medtronic further argues that if the case had been filed appropriately, the only parties to this action would be the plaintiffs and Medtronic, thus establishing complete diversity, while the plaintiffs' claims against the Medical Defendants should have been in a separate state court action.

I must decide whether the plaintiffs joined the claims against Medtronic and the Medical Defendants "where the presence of [the Medical Defendants] would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard." *Conk*, 77 F. Supp. 2d at 971. In order to make the determination, I look to whether the claims against the Medical Defendants arises our of the same transaction or occurrence as the claims against Medtronic and whether there is "at least one common question of law or fact" between the claims against the various defendants. Fed. R. Civ. P. 20(a); *see Ashworth*, 395 F. Supp. 2d at 411-12.

First, I **FIND** that all of the plaintiffs' claims arise out of the same transaction or occurrence. Ms. Wyatt had a product produced by Medtronic implanted into her body during a surgery at CAMC. Thereafter, the product allegedly malfunctioned, causing Ms. Wyatt pain and sending her back to CAMC. Ms. Wyatt alleges that she suffered numerous injuries due to the negligence of CAMC, Dr. Adkins, Charleston Heart Specialists, and Dr. Iyer in treating her and that these same injuries are also due to the actions of Medtronic in designing a product that malfunctioned.

Furthermore, the plaintiffs allege that the actions of all defendants caused injury to Mr. Wyatt and that the plaintiffs are due punitive damages from all defendants due to their conduct in either manufacturing the product or treating Ms. Wyatt. All of these claims for relief arise out of the same occurrence: Ms. Wyatt's surgery and the after effects of that surgery. This is simply not the type of case addressed in *Ashworth*, where the claim against Rite Aid strictly involved a records request that was totally separate from the medical injury allegedly caused by the other defendants. In this case, the medical injuries are intertwined with the claims against Medtronic, not separate and distinct.

Second, I **FIND** that there will be at least one common question of law or fact between the claims against the Medical Defendants and the claims against Medtronic. Notably, the plaintiffs are seeking to recover for the same damages from all defendants. Assuming that the plaintiffs allegations are true, the defendants will almost certainly debate which defendant is most responsible for the injuries. The injuries themselves, the extent of the injuries, and what caused those injuries are common questions of fact that must be resolved as to both the Medical Defendants and Medtronic. There are surely other common questions of law and fact as well.

Furthermore, even if these claims were misjoined, I could not find that the joinder was "so egregious as to constitute fraudulent joinder." *Tapscott*, 77 F.3d at 1360. In order to sever and remand the claims against the Medical Defendants, I would need to find that not only were they joined inappropriately, but that there was "something more" than mere misjoinder. *Bridgestone*, 260 F. Supp. 2d at 728. For example, in *Ashworth* the claim against Rite Aid was so unrelated to the remaining claims that it served merely as method to keep the entire case in state court. Such circumstances do not exist in this case. Rather, this case is about injuries allegedly sustained after

a medical procedure where those injuries were either caused by a malfunctioning product, negligence in the hospital, or both. With such related claims, I cannot find any fraudulent misjoinder remotely similar to the misjoinder addressed in *Ashworth* where one defendant was merely facing a charge about improperly supplying documents that was completely unrelated to the physical injuries alleged against the other defendants.

## IV. Conclusion

Because I **FIND** that the Medical Defendants were not fraudulently misjoined, I also **FIND** that complete diversity does not exist because the plaintiffs are citizens of West Virginia and four of the defendants are citizens of West Virginia. Accordingly, this court does not have jurisdiction over the case. The plaintiffs' Motion to Remand [Docket 7] is **GRANTED** insofar as this case is **REMANDED** to the Circuit Court of Kanawha County, West Virginia. Finally, I **FIND** that Medtronic had an objectively reasonable argument for removal and, therefore, the plaintiffs' Motion to Remand is **DENIED** as to its request for fees and costs.[4]

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party and a certified copy of this Memorandum Opinion and Order to the Clerk of the Circuit Court of Kanawha County, West Virginia.

                    ENTER: July 20, 2009

                    Joseph R. Goodwin, Chief Judge

---

[4] Medtronic's Motion to Stay Pending MDL Transfer [Docket 5] and the plaintiffs' Motion to Defer Consideration and Resolution of Defendants' Motion to Dismiss Pending Resolution of Plaintiffs' Motion to Remand [Docket 16] are hereby **DENIED as moot**. Dr. Iyer and CHS's Motion to Dismiss [Docket 13] is held in abeyance to be resolved by the Circuit Court of Kanawha County, West Virginia.